Jaimie M. SIMON, Plaintiff,

v.

HOWMEDICA OSTEONICS CORPORATION, et al.,
Defendants.

Case No. 12–61946–CIV.

United States District Court,
S.D. Florida.

Nov. 30, 2012.

Jesse Nisan Bernheim, Bernheim & Dolinsky, LLC, Fort Lauderdale, FL, for Plaintiff.

Hildy M. Sastre, Shook Hardy & Bacon, Miami, FL, Edward J. Page, David J. Walz, Carlton Fields, Tampa, FL, for Defendants.

## *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Plaintiff, Jaimie[1] Simon's ("Simon['s]") Motion for Remand and for Leave to Amend the Complaint ("Motion") [ECF No. 13], filed October 29, 2012. The Court has carefully considered the parties' written submissions and applicable law.

## I. BACKGROUND

On September 4, 2012, Simon filed suit in state court seeking damages from Defendants, Howmedica Osteonics Corporation d/b/a Stryker Orthopaedics ("Howmedica"), and Orthopedic Solutions, Inc. d/b/a Stryker South Florida Agency ("Orthopedic Solutions"), on theories of negligence, breach of express warranties, failure to warn, and strict liability. (*See generally* Compl. [ECF No. 1–2] ). Simon and Orthopedic Solutions are residents of Florida, while Howmedica is a resident of New Jersey. (*See id.* ¶¶ 4, 6, 7). Howmedica manufactured and distributed an allegedly defective product under the name "The Rejuvenate ® System," a hip replacement prosthesis, to the general public, including to Simon. (*See id.* ¶ 10). Orthopedic Solutions was the retailer that distributed and sold the product to the public, including to Simon. (*See id.* ¶ 11).

In September 2011, Simon's physician directed the Holy Cross Hospital to order the product for Simon's surgery. (*See id.* ¶ 12). The hospital contacted Orthopedic Solutions and ordered the product for Simon. (*See id.* ¶ 13). Orthopedic Solutions delivered the product to Simon's physician at the hospital, and the defective device was implanted in Simon on September 12, 2011 during a total right hip replacement surgery. (*See id.* ¶¶ 14, 15). As a result, Plaintiff has suffered and continues to suffer damages (*see id.* ¶ 16), and she has since undergone revision surgery, where "fretting and corrosion of the device was confirmed as was the presence of a large pseudotumor" (*id.* ¶ 25). During the first week of July 2012, "the Defendant" issued a voluntary worldwide recall of the defective product. (*Id.* ¶ 17).

Simon asserts five causes of action against Howmedica and Orthopedic Solutions. In Count I, for negligence, Simon alleges Defendants designed, manufactured, and marketed the defective product; and were negligent in its design and manufacture, its testing, and representations made about the product. (*See id.* 11–14). Count II states a claim for breach of express warranty, and is again directed to both Defendants. (*See id.* 14–16). In Count III, Simon seeks to recover against both Defendants on a theory of strict liability-failure to warn. (*See id.* 16–17). In Count IV, Simon states a claim against both Defendants on a theory of strict liability-design defect. (*See id.* 17–18). In Count V, Simon states a claim against both Defendants on a theory of strict liability-manufacturing defect. (*See id.* 18–19).

Howmedica filed its Notice of Removal ("Notice") [ECF No. 1] on October 2, 2012, asserting subject matter jurisdiction on the ground of diversity of citizenship under 28 U.S.C. § 1332. (*See id.* ¶ 6). Howmedica maintained that Orthopedic

---

1. Plaintiff spells her name in the caption of the case as "Jaimie," while in the body of the Motion for Remand variously spells it as "Jai-mie" and "Jaime." The Court uses the spelling that appears in the case caption.

Solutions was fraudulently joined and so its presence in the action should not destroy diversity jurisdiction. (*See id.* ¶ 9). Thereupon, Howmedica furnished a memorandum of law, in its Notice of Removal, addressing why Howmedica was fraudulently joined and its presence in the suit should be disregarded. (*See id.* 3–6). Included with the Notice was the affidavit of the president of Orthopedic Solutions, wherein he states "Orthopedic Solutions is not now nor has it ever been an agent of [Howmedica]." (Affidavit of Frank Russo ¶ 4 [ECF No. 1–3] ). In its Answer [ECF No. 7], Orthopedic Solutions "denies that it has ever done business as Stryker South Florida Agency." (*Id.* ¶ 7). Orthopedic Solutions also raises several affirmative defenses, among them that it did not manufacture, retail, distribute, market, or supply the product; and Plaintiff has no privity with Orthopedic Solutions and so cannot sue for breach of warranties. (*See id.* 5–6).

Simon timely filed the Motion for Remand, including with it an affidavit of the senior director of sales operations and finance for Howmedica, and asserting the affidavit shows Orthopedic Solutions was in fact an agent of Howmedica. (*See* Notice, Ex. D [ECF No. 13–4] ). According to Simon, Howmedica has failed to establish fraudulent joinder, and consequently the Court lacks subject matter jurisdiction and the case should be remanded forthwith. Simon also challenges that Howmedica has established the jurisdictional amount is satisfied, and requests permission to amend the Complaint to add additional, non-diverse defendants.

## II. STANDARDS

### A. Request for a Remand

■ Under 28 U.S.C. § 1447(c), a case removed from state court should be remanded if it appears that it was removed improvidently. The burden of establishing federal jurisdiction falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Moreover, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). When the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

### B. Complete Diversity and Fraudulent Joinder

District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000, and the suit is between citizens of one state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity, meaning that every plaintiff must be diverse from every defendant. *See Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998) (citing *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1355 (11th Cir. 1996)). A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). Moreover, pursuant to 28 U.S.C. § 1441(b), a civil action is removable based upon diversity "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Consequently, a federal court lacks subject matter jurisdiction over a matter brought pursuant to section 1332(a)

if a defendant is a citizen of the state in which the action is brought.

■ Courts have recognized an exception to the complete diversity requirement in cases where a non-diverse party has been fraudulently joined. *See Triggs,* 154 F.3d at 1287. Where a defendant is fraudulently joined, its citizenship is not considered in determining whether complete diversity exists. *See Russell Petro. Corp. v. Environ Prods., Inc.,* 333 F.Supp.2d 1228, 1231 (M.D.Ala.2004). In that situation, the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court. *See Henderson v. Wash. Nat'l. Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir.2006).

The Eleventh Circuit has identified three situations in which joinder may be deemed fraudulent: (1) when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) where a plaintiff has pled fraudulent jurisdictional facts to bring the resident defendant into state court; and (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several, or alternative liability, and the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *See Triggs,* 154 F.3d at 1287 (citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir.1993); *Tapscott,* 77 F.3d at 1355, *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000)).

■ As with any request for a remand, the removing party bears the burden of demonstrating fraudulent joinder, *see Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997), and must do so by clear and convincing evidence, *see Henderson,*

454 F.3d at 1281. All factual allegations must be resolved in a light most favorable to the plaintiff. *See Crowe,* 113 F.3d at 1538. "Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1380 (11th Cir.1998) (citing *Crowe,* 113 F.3d at 1538; *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1562 (11th Cir.1989)). Further, the claims against those defendants who are alleged to be fraudulently joined must be obviously frivolous, and the mere possibility of stating a valid cause of action makes joinder legitimate. *See Accordino v. Wal–Mart Stores East, L.P.,* No. 3:05–CV–761J32–MCR, 2005 WL 3336503, at *2 (M.D.Fla. Dec. 8, 2005).

## C. Request to Add Non–Diverse Defendants

Under Section 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

## III. ANALYSIS

■ Howmedica argues only the first basis for a finding of fraudulent joinder: that Simon has failed to demonstrate she has a viable claim against Orthopedic Solutions. To prevent an order of remand, Howmedica must show "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Florence v. Crescent Res., LLC,* 484 F.3d 1293, 1297 (11th Cir.2007) (quoting *Crowe,* 113 F.3d at 1538). Howmedica has carried this burden with clear and convincing evidence. (*See generally* Resp. [ECF No. 16] ). Indeed, Simon does not even address the fraudulent joinder issue at all in

her Reply [ECF No. 19], acknowledging the strength of Howmedica's showing.

To summarize what Howmedica has presented, contrary to the allegations in Simon's Complaint or the affidavit supplied, Orthopedic Solutions did not market, retail, sell, distribute or supply the product implanted in Simon; it has never marketed, retailed, sold, distributed or supplied any Howmedica products; and hence it is impossible for Orthopedic Solutions to be strictly liable to Simon for her injuries. (*See* Resp. 5). Recently the court in *Devore v. Howmedica Osteonics Corp.*, reached the same conclusion when presented with the inadequate affidavit Simon presents here with her Motion, denying the plaintiff's motion to remand. 658 F.Supp.2d 1372, 1377 n. 10 (M.D.Fla.2009) ("[D]efendants have provided ample documentary evidence to support the contention that Orthopedic Solutions was uninvolved in the sale or distribution of the subject hip prosthesis to Devore, and Devore has produced no evidence to the contrary.").

■ With regard to the amount in controversy, the Notice of Removal evaluates the cost of Simon's primary and revision hip surgeries, her alleged injuries, and the cost of the medical and rehabilitative care she has received. (*See* Notice 6–7). Further, Howmedica provides numerous examples of similar cases involving defective hip implants, where courts have held the amount in controversy was satisfied. (*See id.* 8). To this, Simon merely furnishes a denial, without any corroborating evidence that she is seeking less than the jurisdictional amount. Simon could have "submitted affidavits admitting the claim was less than the jurisdictional amount if that is what the motion to remand was meant to accomplish," *Morock v. Chautauqua Airlines, Inc.*, No. 8:07–CV–00210–T17MAP, 2007 WL 1725232, at *2 (M.D.Fla. June 14, 2007), but she did not. The Court is satisfied Howmedica has carried its burden as to the jurisdictional amount.

■ The remaining issue, then, as recognized and emphasized by Simon in her Reply, is whether she should be permitted leave to amend the Complaint to add a non-diverse party and hence have the case remanded to state court. One entity Simon is seeking to add as a defendant is Orthopedic Implant Professionals, Inc. ("OIP"), a Florida resident that, if added to the case, would defeat diversity where the fraudulently joined Orthopedic Solutions cannot. In deciding whether to grant Simon's request to add a non-diverse defendant, the Court is not to consider the liberality of allowing amendments under Federal Rule of Civil Procedure 15, but rather section 1447(e) and the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether Simon has been dilatory in asking for the amendment; (3) whether Simon will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities. *See Henry v. K–Mart Corp.*, No. 8:10–cv–2105–T–33MAP, 2010 WL 5113558, at *1–2 (M.D.Fla. Dec. 9, 2010) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987)).

All four factors justify granting Simon's request to add OIP to the lawsuit. As to the first factor, there is no evidence that Simon is seeking leave to amend her Complaint for the sole purpose of defeating federal jurisdiction, particularly where she initially sued Orthopedic Solutions under the belief that it was an agent of Howmedica and was seeking to hold it responsible under a theory of strict liability. Leave to amend should generally be freely granted when it is requested early in a case, and Simon has not even been afforded the opportunity to amend her September 4,

2012 Complaint once. With regard to the second factor, clearly Simon has not been dilatory in asking for the amendment, where she sought to do so with her Motion, the first document she filed here.

The third element to consider is whether Simon will be significantly injured if the amendment is not allowed. "The underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" *Samuel Friedland Family Enters. v. Amoroso*, 630 So.2d 1067, 1068 (Fla.1994) (quoting *No. Miami Gen. Hosp., Inc. v. Goldberg*, 520 So.2d 650, 651 (Fla. 3d DCA 1988)). Consequently, Florida has expanded the doctrine of strict liability to the chain of manufacturers, wholesalers, distributors, and retailers. *See id.* ("Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors.") (citations omitted). Each entity in the chain of distribution, including OIP, may be found liable for a defective and dangerous product on a theory of strict liability.

According to Simon's interpretation of the materials supplied by Howmedica in its Response, OIP is and was the exclusive agent of Howmedica with exclusive right to sell its products including the product at issue, during the relevant period covered by Simon's causes of action:

> OIP had exclusive rights to sell Howmedica's products in South Florida, directly marketed those products to healthcare providers in South Florida, placed orders for Homedica [sic] products, occasionally distributed those products to customers in its exclusive territory, was in the business of selling Howmedica products including the Reju-venate System, and derived a revenue from those sales, marketing and distribution activities.

(Repl. 4). Because it appears that Simon will be able to state a claim against OIC, Simon satisfies the third factor, namely, that she will be significantly injured if the amendment is not allowed. That Howmedica does not intend to offer a *Fabre* defense involving the proposed defendants or file a third-party claim for contribution against them, as Howmedica states (*see* Resp. 13), does not remove the injury to Simon in being unable to seek to have a second party in the distribution chain of the offending product held strictly liable for her injuries. More generally, Howmedica's "present trial strategy does not affect this Court's jurisdictional analysis" under section 1447(e). *Bechtelheimer v. Cont'l Airlines, Inc.*, 776 F.Supp.2d 1319, 1323 (M.D.Fla.2011) (rejecting the defendant's argument that its willingness not to add a party as a *Fabre* defendant was entitled to weight under the third factor in the 1447(e) analysis).

Lastly, the equities favor allowing Simon the ability to bring in additional defendants. If she is unable to sustain her claims against these additional defendants, including OIC, Howmedica can later remove the action when complete diversity exists.

Accordingly and for the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff, Jaimie Simon's Motion for Remand and for Leave to Amend the Complaint **[ECF No. 13]** is **GRANTED**. The Clerk is directed to remand this case to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.